UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 JUN 25  PM 3: 23

BY_____
DEPUTY CLERK

| | |
|---|---|
| SETTLEMENT FUNDING, LLC d/b/a<br>  PEACHTREE SETTLEMENT FUNDING,<br><br>      Plaintiff,<br><br>      v.<br><br>JOSHUA R. DIAMOND and DIAMOND<br>  and ROBINSON, P.C.<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 2:15-cv-148

## COMPLAINT

Plaintiff Settlement Funding, LLC d/b/a Peachtree Settlement Funding (hereinafter,

"Peachtree"), by its attorneys Downs Rachlin Martin PLLC, complains and alleges as follows:

### NATURE OF ACTION

This is a claim of legal malpractice arising out of Defendants' representation of Peachtree

in connection with a Tri-State Lottery winner's sales of her payment stream to Peachtree. Prior

to arranging the sale of a portion of Ms. Karen Hadley's payment stream to Peachtree,

Defendants Joshua Diamond and Diamond and Robinson, P.C. had arranged a similar sale of Ms.

Hadley's winnings to a different, unrelated entity – Seneca One Finance, Inc. ("Seneca").

Unbeknownst to Peachtree, the payment stream that it purchased included a payment that had

already been purchased by Seneca. Defendants had arranged both transactions, and therefore

had at least constructive, if not actual, knowledge that the payment in question had already been

transferred to Seneca. In addition to their general duty to perform due diligence and render

competent services, Defendants were thus in position to have first-hand knowledge of which of

Ms. Hadley's payments had been pledged and which were still available for transfer. Despite

Downs
Rachlin
Martin PLLC

this, Defendants arranged for Peachtree to purchase a future payment which Defendants themselves had earlier helped to sell to Seneca. In so doing, Defendants' representation of Peachtree fell below the required standard.

The transaction to Peachtree occurred in 2006. The payment at issue was scheduled to be paid to Peachtree (and, as it turns out, to Seneca) in 2013. Thus, the issue of the overlapping payment and the existence of Defendants' negligence did not become known to Peachtree until 2013. In early 2013, the Vermont Tri-State Lottery Commission became aware of Seneca and Peachtree's conflicting claims to the payment and advised Peachtree that the Commission would not be making the full scheduled 2014 payment to Peachtree but, instead, would be sending a portion of that payment to Seneca. After sporadic discussions with Peachtree for the remainder of 2013, the Commission initiated formal proceedings in Washington Superior Court at the end of 2013 to obtain court approval of its proposed course of action. Peachtree entered its appearance and litigated the matter, arguing that the Commission was obligated to make the full 2014 payment to Peachtree, but ultimately lost as reflected in a July 28, 2014, Opinion and Order of the Washington Superior Court.

Because Peachtree has suffered substantial damage, well in excess of the $77,500 missed payment, it brings this action.

PARTIES AND JURISDICTION

1.  Plaintiff Peachtree is a Georgia limited liability company with a principal place of business in Norcross, Georgia.

2.  Defendant Joshua R. Diamond, Esq. is a natural person who is a resident of the State of Vermont. Defendant Joshua R. Diamond is an attorney licensed to, and practicing in, the State of Vermont.

Downs
Rachlin
Martin PLLC

2

3.      Defendant Diamond and Robinson, P.C. is a Vermont professional corporation with its principal place of business in Montpelier, Vermont.

4.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00.

5.      Venue is proper in this District under 28 U.S.C. §1391(a)(2), as a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

<u>GENERAL ALLEGATIONS</u>

6.      In December 2002, Karen E. Hadley won the Tri-State Megabucks Lottery entitling her to 25 equal annual payments of $141,000, exclusive of taxes.

7.      The first annual payment was made to Ms. Hadley in early January 2003.

8.      On or about June 21, 2003, Ms. Hadley entered into an agreement with Seneca whereby she assigned a portion of her next ten (10) annual payments to Seneca in exchange for a lump sum payment of $403,102.

9.      Specifically, Ms. Hadley assigned $77,500 of the annual $141,000 payment to Seneca in exchange for the lump sum payment.

10.     The Defendants represented Seneca in this transaction.

11.     In connection with their representation of Seneca, Defendants prepared and filed a Petition to the Washington Superior Court seeking its approval of the assignment pursuant to 31 V.S.A. § 674(L).1A.

12.     This Petition incorrectly indicated that the date of the annual payments to Ms. Hadley was in December of each year, instead of January of the following year.  Thus, the Seneca Petition incorrectly stated that Ms. Hadley would receive her next annual payment in December 2003.

Downs
Rachlin
Martin PLLC

3

13.     Regardless, the Washington Superior Court approved the Petition with the incorrect payment dates.

14.     Pursuant to the incorrect terms of the Petition, Seneca was scheduled to receive the last installment of $77,500 in December 2012.

15.     As explained by the Washington Superior Court in its Ruling on this matter, because Ms. Hadley could only receive one payment per year, "the Commission treated the reference to December 26, 2003 [in the incorrect Petition and subsequent Court Order] as referring to the January 2004 installment.  That caused no controversy at the time."  In re Karen E. Hadley & Settlement Funding, LLC, Docket No. 735-12-05 Wncv, Ruling on Motion to Reconsider (7/28/2014) (hereinafter "Ruling") at 1-2 (attached hereto as Exhibit A).

16.     On or about September 5, 2005, Ms. Hadley entered into another agreement transferring her entitlement to the stream of payments from the Tri-State Megabucks Lottery in exchange for a lump sum, up-front payment.

17.     Specifically, Ms. Hadley entered into an agreement with the Plaintiff whereby Ms. Hadley assigned her right to the full annual payments ($141,000) to Plaintiff for fifteen (15) annual payments beginning in January 2013 in exchange for a lump sum payment of $850,000 from Plaintiff.

18.     The Defendants represented Plaintiff in this second transaction.

19.     In connection with their representation of Plaintiff, Defendants again prepared and filed a Petition to the Washington Superior Court seeking its approval of this second assignment pursuant to 31 V.S.A. § 674(L).1A.

20.     In contrast to the first Petition prepared by Defendants for Seneca, the second Petition prepared by Defendants for Peachtree correctly stated the date of the annual payments to Ms. Hadley as

occurring in January of each year.  Thus, this second Petition provided that Plaintiff would be entitled to the full annual payment owed to Ms. Hadley beginning with the payment on or about January 2, 2013.

21.     In handling this second transaction for Peachtree, and in preparing and filing the Petition and other documents for this second transaction, Defendants negligently overlooked the fact that the first Peachtree payment scheduled for January 2013, was already partially pledged to Seneca.

22.     The eleventh (11) annual payment of $141,000 to Ms. Hadley was appropriately payable by the Commission to Ms. Hadley, or her assigns, in January 2013.  Defendants, however, had previously effected the transfer of $77,500 of this 11th payment to Seneca, but had incorrectly indicated that this 11th payment was to occur in December 2012.

23.     It thus appears that in arranging the second assignment transaction, the Defendants were misled by their earlier error into believing that the payments beginning in 2013 were fully amenable to transfer when in fact Defendants themselves had actually already pledged the "2013" payment to Seneca.

24.     Regardless of the reasons, Defendants caused the same payment to be pledged to two wholly unrelated entities.

25.     Upon information and belief, the Commission first became aware of the conflicting claims to the same *res* in or about December 2012, when it was preparing to make the final scheduled payment to Seneca.

26.     The Commission duly paid Plaintiff the full $141,000 it was owed in early January 2013.

27.     Shortly thereafter, however, the Commission was contacted by Seneca regarding the fact that Seneca did not receive payment of the $77,500 in December 2012 to which it believed it was entitled.

Downs
Rachlin
Martin PLLC

5

28.    During the next several months, the Commission was in contact with both Seneca and Plaintiff regarding the situation.

29.    In December 2013, the Commission moved to re-open Docket No. 735-12-05 Wncv in order to seek to amend the Final Order in that matter to the effect that Plaintiff would be deprived of $77,500 of its January 2014 payment in order that the Commission might pay that sum to Seneca.

30.    Plaintiff appeared in this re-opened matter and aggressively litigated the issues, arguing that it should not be deprived of $77,500 of its January 2014 payment.

31.    While the matter was pending, the Commission paid Seneca $77,500 and Plaintiff $63,500.

32.    Ultimately, on July 28, 2014, the Washington Superior Court issued its Ruling, concluding that Plaintiff would be forced to suffer the consequences of the mistaken/incorrect filings made by Defendants.

33.    As a direct result of Defendants' professional negligence and failure to act in accordance with established standards, Plaintiff has suffered significant injury.

34.    In addition to the $77,500 payment from the Commission which Plaintiff never received due to Defendants' actions, Plaintiff has suffered substantial consequential damages.

35.    The stream of payments that Plaintiff purchased was incorporated into, and part of, a credit facility interest rate swap contract.  Because of the payment shortfall, due to Defendants' misfeasance, the Plaintiff was deemed in breach of the facility and incurred $534,000 in breakage fees.

36.    In addition, Peachtree was unable to re-securitize the asset and was therefore obligated to repurchase the entire credit facility on the open market for some $377,531.06 more than the facility had originally cost.

Downs
Rachlin
Martin PLLC

6

37.     These damages were a direct and proximate result of Defendants' professional malpractice.

38.     Moreover, Plaintiff has incurred significant attorneys' fees and other costs in attempting to rectify the situation caused by Defendants' malpractice.

39.     The damages suffered by Plaintiff, for which Plaintiff seeks recovery in this action, far exceed the jurisdictional requirement of this Court.

## COUNT I – PROFESSIONAL MALPRACTICE (NEGLIGENCE)

40.     Plaintiff reasserts and repeats the allegations set forth in Paragraphs 1 through 39 above as if fully set forth herein.

41.     Plaintiff retained Defendants to act as Plaintiff's attorneys in connection with the purchase and assignment of Ms. Hadley's lottery winnings.  An attorney-client relationship thus existed between Plaintiff and Defendants at all times relevant to this action.

42.     By virtue of this attorney-client relationship, Defendants owed a duty of due care to Plaintiff.

43.     By the actions, and omissions, outlined in Paragraphs 1 through 39 above, Defendants failed to perform their work in accordance with established standards of skill and care.

44.     Defendants' negligence proximately caused substantial harm to Plaintiff.

45.     The damages suffered by Plaintiff as a direct and proximate result of Defendants' negligence include both general and special damages.

46.     In particular, as described in Paragraphs 1 through 39 above, Defendants' negligence directly and proximately caused the Plaintiff to be deprived of $77,500 of a scheduled payment.

47.     Because of this payment shortfall, the Plaintiff was deemed in breach of the credit facility into which the payment stream was incorporated, and incurred $534,000 in breakage fees as a direct result of Defendants' negligence.

48.     In addition, as a direct and proximate result of Defendants' negligence, Plaintiff was forced to repurchase the entire credit facility on the open market for some $377,531.06 more than the facility had originally cost.

49.     Plaintiff has also been required to incur significant attorneys' fees and costs in order to attempt to rectify the consequences of Defendants' negligence.

WHEREFORE, Plaintiff Settlement Funding, LLC d/b/a Peachtree Settlement Funding respectfully requests that this Court enter a Judgment and Decree:

A.     ENTERING JUDGMENT in favor of Plaintiff and against Defendants on its Professional Malpractice count in this action;

B.     AWARDING Plaintiff general and special damages as set forth above, including, but not limited to, the breakage fees, increased repurchase cost of the credit facility, and attorneys' fees and costs suffered by Plaintiff as a direct result of Defendants' negligence, along with prejudgment interest at Vermont's legal rate (12%);

C.     GRANTING such other relief as this Court deems just and equitable.

## **REQUEST FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury on all issues so triable.

Downs
Rachlin
Martin PLLC

Dated at Burlington, Vermont this 25th day of June, 2015.

SETTLEMENT FUNDING, LLC
d/b/a PEACHTREE SETTLEMENT
FUNDING


Eric A. Poehlmann
Downs Rachlin Martin PLLC
  Attorneys for Settlement Funding, LLC
  d/b/a Peachtree Settlement Funding
199 Main Street
P.O. Box 190
Burlington, VT  05402
(802) 863-2375

16015218.2

Downs
Rachlin
Martin PLLC                              9